**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK D. CLARKE, | : | |
| | : | |
| Plaintiff, | : | **CIVIL ACTION NO.** |
| | : | |
| KIPP ADMINISTRATIVE SERVICES CORPORATION and KIPP NORTH PHILADELPHIA CHARTER SCHOOL, | : | **DEMAND FOR JURY TRIAL** |
| | : | |
| Defendants. | : | |

**CIVIL ACTION COMPLAINT**

Plaintiff Mark D. Clarke (hereinafter "Plaintiff" or "Mr. Clarke"), by and through his undersigned counsel, brings this civil action against the Defendant KIPP Administrative Services Corporation and Defendant KIPP North Philadelphia Charter School alleging that he was terminated from his employment in violation of the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421-1428, the First Amendment, 42 U.S.C. §1983, and in violation of his Section 1983 substantive due process rights, 42 U.S.C. § 1983.

**PARTIES**

1. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

2. Plaintiff, Mark D. Clarke, is an adult male individual and a citizen of the State of New York.

3. Defendant, KIPP North Philadelphia Charter School (PA # 4306035), a/k/a KIPP North Philadelphia Academy is a charter school organized under the Pennsylvania Public School Code of 1949, with its principal office located in Philadelphia, PA.

1

4. Defendant, KIPP Administrative Services Corporation (PA #40229706) is the parent company and operator of KIPP North Philadelphia Charter School, with its principal office located in Philadelphia, PA.

5. Because of the Defendants' interrelation of operation, common ownership or management, centralized control of labor relations, financial controls, and other factors, Defendant KIPP North Philadelphia Charter School and Defendant KIPP Administrative Services Corporation are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer (hereinafter "Defendant" or "KIPP" unless noted as "Defendant North Philadelphia Charter School" or Defendant KIPP Administrative Services Corporation").

6. At all times relevant hereto, Plaintiff was employed by the Defendant.

7. At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, each of which acted within the scope of his or her job responsibilities.

8. Defendant KIPP Administrative Services Corporation operates seven (7) public charter schools in Philadelphia.

## JURISDICTION AND VENUE

9. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

10. This Court has original subject matter jurisdiction over Mr. Clarke's First Amendment and Due Process claims pursuant 28 U.S.C. § 1331 and jurisdiction over his Pennsylvania Whistleblower claim pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

11. Mr. Clarke's Pennsylvania Whistleblower claim is so closely related to his First Amendment claim that it forms part of the same case or controversy under Article III of the United States Constitution.

**STATEMENT OF FACTS**

12. The foregoing paragraphs are incorporated by reference herein as if the same were set forth at length.

13. On or about July 8, 2024, Mr. Clarke was hired as the School Leader at KIPP North Philadelphia Charter School a/k/a KIPP North Philadelphia Academy.

14. Mr. Clarke has a long professional history in education and school administration, having worked as an Education Consultant, Principal, and has run special education programs for diverse low-income students. Mr. Clarke also holds a master's degree in Educational Supervision & Administration from the City University of New York, Baruch College.

15. Mr. Clarke was hired to be a "transformational/turnaround" School Leader and, in large part, to prepare the school for their Charter School Renewal visit for the school year 2024-25.

16. KIPP North Philadelphia Charter School was issued a one-year renewal for 2023-2024. Schools customarily receive a multiple year renewal, and a one-year approval is akin to a probationary approval by the Philadelphia School District.

17. In its Charter Evaluation for 2023-24 of KIPP North Philadelphia Charter School, evaluators found that the school had two (2) violations with respect to evacuation drills and failed to submit its financial audit before the December 31, 2022 deadline.[1]

---

[1] *See* pgs 14-14 - https://drive.google.com/file/d/1Njj68LEUpxquS8iEbd-99Wm50VsFxZLN/view (last visited February 24, 2025),

3

18. The evaluators also noted that KIPP North Philadelphia Charter School had a higher rate of student suspension, chronic absenteeism, and teacher turnover compared to "similar" schools or Philadelphia School District School schools.

19. Mr. Clarke was hired to address the evaluators' concerns as well as to act as "… The Transformational Leader at KNPA [to] set a clear, ambitious and focused vision for the school and relentlessly drive towards that vision. This leader will set clear expectations for students and staff and hold them accountable AND provide support to meet those expectations. The transformational leader at KNPA will address challenges head on and keep staff and students centered on our goals - radically improving school outcomes."

20. Mr. Clarke was specifically advised, by KIPP's CEO Natalie Wiltshire, that he was brought to make these changes and to make KIPP North Philadelphia Charter School a viable school with programming that supported academic and social achievement.

21. Mr. Clarke was excited for the challenge and moved from New York for the position.

22. Upon his arrival in Philadelphia, Mr. Clarke set to work. However, he very quickly came to realize that the school was unsafe and that he believed that the school's special education program was not providing the services the students needed or were required under federal law despite receiving state and federal money to do so.

23. As a way of example, KIPP Noth Philadelphia Charter School was placing special education students in classrooms without providing the specific services identified in their Individualized Education Programs ("IEP"), while continuing to knowingly accept aid from the Commonwealth of Pennsylvania and federal funding.

24. Approximately 17.9% of KIPP North Philadelphia Charter School's student population during the 2023-24 year needed special education assistance and/or have an IEP.[2]

25. On or about July 18, 2024, Mr. Clarke directly raised his concerns with Melissa Poorman, KIPP's Head of Schools, and Amanada Neill, KIPP's Managing Director, Student Support. Specifically, Mr. Clarke notified them that KIPP was not providing services to its students based on the students' specific IEPs.

26. Mr. Clarke stated his concern that, while KIPP was accepting government funds based upon the special education status of its students, KIPP was also packing special education students into specific "special education" only classrooms without the proper student to teacher ratios or without regard to the individualized education programs required by each student's IEP. Accordingly, these classrooms made the entire school unsafe because KIPP did not have the proper staff in place to meet the needs of these students.

27. On or about the last week of July or first week in August 2024 in Orlando, Florida, Mr. Clarke once again raised the special education compliance issues, to no avail.

28. In response, KIPP leadership stated, "it's not the KIPP way." They also claimed to not have the budget to hire the proper number of teachers and staff.

29. During his short tenure, Mr. Clarke also identified significant safety issues. For example, the school was not requiring visitors to sign-in and the school had not conducted any sort of safety drills in the last three (3) years.

30. Students returned from Summer break on August 21, 2024.

31. On August 28, 2024, Mr. Clarke had to deal with three (3) significant school safety issues. Specifically, there was a credible threat that a student possessed a firearm, rabid off leashed

---

[2] *See* https://futurereadypa.org/School/FastFacts?id=200103067042160230037029220126115020129246066156.
(last visited February 24, 2025).

5

pit bulls were menacing students, teachers and visitors around the school, and two (2) students, who had previously assaulted a school resources officer, left the middle school and were attempting to take their elementary school sister out of school.

32. In response to these safety concerns, Mr. Clarke called the Philadelphia Police. Specifically, Mr. Clarke contacted the Community Resource Officer at the 22nd Philadelphia Police Department.

33. Upon arrival, the Community Resource Officer did not interact with any students but took a report on the safety incidents.

34. Two days later, on August 30, 2024, Natalie Wiltshire, KIPP CEO, called Mr. Clarke and told him that he was being terminated for engaging the police.

35. It was clear at that time, and leading up to his termination, that KIPP officials did not want Mr. Clarke to raise these safety and special education issues internally or externally while the charter school evaluation process was ongoing.

36. Mr. Clarke's compensation at the time of his termination was a salary of $174,669.00 a year along with medical, dental, vision life, and disability benefits through his employment with KIPP.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Defendant's Violation of the Pennsylvania Whistleblower Law**
**43 P.S. §§ 1421-1428**

37. Mr. Clarke incorporates the preceding paragraphs and sets forth more fully at length herein.

38. Mr. Clarke was an employee of the publicly funded Defendant as a School Leader at its KIPP Noth Philadelphia Charter School.

39. Mr. Clarke, in good faith, reported waste and abuse directly to Natalie Wiltshire, KIPP's CEO, Melissa Poorman, KIPP's Head of Schools and Amanada Neill, KIPP's Managing Director, Student Support.

40. Mr. Clarke was thereafter terminated from his employment shortly following his reports.

**WHEREFORE**, Mr. Clarke seeks the damages sets forth in the Prayer for Relief of this Complaint.

## SECOND CLAIM FOR RELIEF
### Defendant's Violation of the First Amendment (Retaliation)
### 42 U.S.C. § 1983

41. Mr. Clarke incorporates the preceding paragraphs and sets forth more fully at length herein.

42. Mr. Clarke engaged in constitutionally protected conduct by informing Natalie Wiltshire, KIPP's CEO, Melissa Poorman, KIPP's Head of Schools and Amanada Neill, KIPP's Managing Director, Student Support about waste, wrongdoings, and safety issues at KIPP.

43. Defendant is a state actor for the purposes of the First Amendment.

44. Mr. Clarke was subjected to an adverse action when he was terminated from his employment.

45. Mr. Clarke's protected activity of informing Natalie Wiltshire, KIPP's CEO, Melissa Poorman, KIPP's Head of Schools and Amanada Neill, KIPP's Managing Director, Student Support about waste, wrongdoings, and safety issues at KIPP was a substantial motivating factor in the Defendant's decision to terminate Mr. Clarke's employment.

**WHEREFORE**, Mr. Clarke seeks the damages sets forth in the Prayer for Relief of this Complaint.

## THIRD CLAIM FOR RELIEF
### Defendant's Violation of Procedural Due Process
### 42 U.S.C. § 1983

46. Mr. Clarke incorporates the preceding paragraphs and sets forth more fully at length herein.

47. Defendant is a state actor for purposes of § 1983.

48. Defendant acted under color of state law in terminating Mr. Clarke's employment.

49. Mr. Clarke had a property interest in his job as School Leader at KIPP North Philadelphia Charter School.

50. The Defendant did not provide Mr. Clarke with due process in terminating his employment, in violation of the Fifth and Fourteenth Amendments to the Constitution.

**WHEREFORE**, Mr. Clarke seeks the damages sets forth in the Prayer for Relief of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Mark Clarke, prays for relief as follows:

(a) Damages for past and future monetary losses as a result of Defendant's unlawful actions;

(b) Compensatory damages;

(c) Emotional pain and suffering;

(d) An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(e) Pre-judgment and post-judgment interest, as provided by law; and

(f) Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Clarke demands a trial by jury in this action.

Dated: February 25, 2025              Respectfully submitted,

By:  */s/ Ryan Allen Hancock*

**WILLIG, WILLIAMS & DAVIDSON**
Ryan Allen Hancock (PA 92590)
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
(215) 656-3679
rhancock@wwdlaw.com

*Counsel for Plaintiff*