**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK D. CLARKE,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| | : | No. 25-00997-JMY |
| v. | : | |
| | : | |
| **KIPP ADMINISTRATIVE SERVICES** | : | |
| **CORPORATION and KIPP NORTH** | : | |
| **PHILADELPHIA CHARTER SCHOOL,** | : | |
| | | |
| *Defendants.* | | |

**<u>MEMORANDUM</u>**

**Younge, J.**                                                                **May 27, 2026**

## I.    INTRODUCTION

Plaintiff Mark D. Clarke ("Plaintiff") brings this action against Defendants KIPP Administrative Services Corporation and KIPP North Philadelphia Charter School ("KIPP North") (collectively referred as "KIPP"), alleging that his termination as Principal at KIPP North resulted in a: (1) violation of the Pennsylvania Whistleblower Law pursuant to 43 P.S. §§ 1421-1428, (2) retaliation in violation of the First Amendment pursuant to 42 U.S.C. § 1983, and (3) violation of Plaintiff's procedural due process pursuant to 42 U.S.C. § 1983. (ECF No. 1). Before the Court is KIPP's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 19). The Court finds this Motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in the Memorandum, KIPP's Motion for Summary Judgment is DENIED.

## II.    FACTUAL BACKGROUND

Plaintiff complains that he was unlawfully terminated from his position as Principal of KIPP North on August 30, 2024. (ECF No. 1). Following an extensive interview process, Plaintiff

alleges that Natalie Wiltshire, KIPP's Chief Executive ("CEO Wiltshire") hired him to be a "transformational/turnaround" leader on or about July 9, 2024, in part because of his decade-long professional experience in education, school administration, and special education programming. (ECF No. 22-2). CEO Wiltshire also hired Plaintiff to prepare the school for their charter school renewal visit since the Philadelphia School District temporarily renewed KIPP North's charter for one year rather than fully renewing it. (*Id*).

It is undisputed that Plaintiff's employment status was an at-will employee of KIPP North. (ECF Nos. 19-2 and 22-2). Plaintiff's contract also included two provisions to protect against workplace misconduct. First, the Anti-Retaliation Policy prohibits retaliation against good faith reports of discrimination or participating in an investigation of allegations of such conduct. (Ex. K, ECF No. 19-2). Second, the Whistleblower Policy prohibits retaliation against employees who report violations or suspected violations of the policy, including legal or regulatory compliance issues. *See* (*Id*).

During a short six-week tenure as Principal, Plaintiff sought to address several concerns related to teacher retention, staff culture, student experience, and safety around the school building before being terminated. (*Id*). Plaintiff began working on July 12, 2024, three days before his official start date, having understood serving as Principal at KIPP North would be "challenging." (Wiltshire Dep. 60:12-19, ECF No. 22-2). In fact, Plaintiff found that Philadelphia School District had previously determined that KIPP North did not meet academic standards because its students ranked significantly lower than similarly situated public schools on the Pennsylvania System of School Assessment (PSSA), its students' absentee rate was high, and behavioral and disciplinary issues persisted weekly. (ECF No. 22-2). Plaintiff also alleges that he was tasked with hiring new staff, adopting a new curriculum, and adding a new grade level to the school. (*Id*). While the role

was "challenging", Plaintiff alleges that CEO Wiltshire and KIPP North staff were resistant to his recommended changes to KIPP North's policies and procedures. (*Id*).

For instance, Plaintiff alleges that he complained to CEO Wiltshire, Head of Schools Melissa Poorman ("Ms. Poorman"), and other KIPP leadership about compliance violations regarding KIPP North's special education program. (*Id*). During Plaintiff's first few weeks as Principal, he reviewed KIPP North's historical behavioral data, the Individualized Education Plans[1] ("IEP") and other sensitive school information, to evaluate the school's special education program. (*Id*). Having prior experience as a school compliance evaluator of federal and state requirements, Plaintiff believed that KIPP North's special education program violated the Individuals with Disabilities Education Act ("IDEA"), a federal law informing special education programs in the United States, and Pennsylvania law as it relates to its' IEP class structures[2]. (ECF Nos. 19-2 and 22-2). Consequently, Plaintiff alleges that he proposed a class restructuring model to comply with the law, but such plans were ultimately rejected because "it was not the KIPP way" and those changes would be "detrimental" to the pre-approved budget. (Ex. D, Pl. Dep. 92:18-20, ECF No. 19-2). Even though Plaintiff directly correlated the class structure compliance violations with the students' behavioral issues, KIPP disputes such correlations and any suggested knowledge of compliance violations. (Ex. D, Pl. Dep. 82:5-13, 84:1-12, ECF No. 19-2).

Plaintiff further alleges that there were several safety concerns confronting KIPP North that necessitated immediate attention. (ECF No. 22-2). Namely, KIPP North did not require visitors to show identification to enter the school, nor were they required to be escorted throughout

---

[1] IEPs include classifications, such as behavioral, emotional, or academic, which are tailored to address each student's specific needs. The services identified in an IEP are designed to support those individualized classifications. (Pl. Dep. 83:19-24).

[2] For example, Plaintiff alleges that KIPP North placed all the students with IEP in one class, where a class of 33 students had 16 students with IEP and the rest were non-IEP students. (Pl. Dep. 81:3-87:3).

the school. (*Id*). Having received reports of visitor breaches, a bomb threat, and threats to students, Plaintiff implemented a new policy requiring parents and visitors to show identification before entering the school. (*Id*). During the first week of the school year, Plaintiff called the Philadelphia Police Department on two separate occasions. (*Id*). First, on August 28, 2024, to address a report of unleashed stray dogs biting at students, staff, and parents. (*Id*). Second, on August 29, 2024, to address a parent report of a KIPP North student appearing in a screenshot from social media with a firearm. (*Id*). Plaintiff met with that same student a day prior regarding the student's discussion about guns during class instruction. (*Id*). Plaintiff also consulted the police about general security concerns. (*Id*). Thereafter, Plaintiff alleges CEO Wiltshire and Ms. Poorman did not approve of him calling the police. (*Id*). While disputed, Plaintiff alleges he did not receive instructions from KIPP about calling the police. (*Id*).

On August 30, 2024, CEO Wiltshire terminated Plaintiff's employment at a meeting that lasted five (5) minutes. (*Id*). There is significant disagreement between the parties regarding this meeting. KIPP alleges that CEO Wiltshire explained that "multiple events led to the termination decision, including Plaintiff's lack of reflection in decision-making and his unnecessar[y] engagement of police." (*Id*). Some of the events included Plaintiff's failure to find a house and relocate to Pennsylvania, his failure to download a communication app—Slack to his phone, his failure to implement an effective arrival protocol, and his failure to satisfactorily select a school uniform vendor. (*Id*). KIPP also alleges that Plaintiff failed to retain teachers since three staff members left KIPP North before the school year began. (*Id*). Plaintiff, however, maintains that he was fired solely for reporting the gun incident to the police. (*Id*). Ms. Poorman, who also attended the five-minute meeting, testified to the same. *See* (Ex. Poorman Dep. 131:17-24; 132:1-7, ECF No. 22-2). Moreover, Plaintiff maintains that the staff departures do not reflect his leadership.

(ECF No. 22-2). Instead, they were driven by residual turnover from the previous year, which notably included the unexpected departure of his predecessor. (*Id*).

Despite KIPP now finding that Plaintiff was no longer a good fit for KIPP North, Plaintiff allegedly made positive, tangible improvements at the school in his short six-week tenure as Principal. (*Id*). Plaintiff contends that he worked hard to address the many challenges facing KIPP North and his leadership concerns. (*Id*). Without an opportunity to be heard—orally or in writing before being terminated, Plaintiff relies on CEO Wiltshire's five-minute discussion on why he was fired to support his claims before the Court. Following this review of the material facts that are undisputed and those that remain in dispute, the Court now turns to the parties' arguments.

### III.    LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of h[is] case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving

party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotations omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV.    DISCUSSION

Before this Court is KIPP's summary judgment motion contesting Plaintiff's Whistleblower claims under federal and state law. KIPP argues that, because there are no genuine disputes of material facts, they should be entitled to judgment as a matter of law. The Court disagrees. It is clear from the record that Plaintiff has produced sufficient evidence to establish that there are genuine and material issues of fact that must be resolved by a jury. *See Santini*, 795 F.3d at 416. Construing these facts and inferences herein in favor of the Plaintiff as the nonmoving party, the Court is precluded from entering summary judgment in favor of KIPP.

**Count I: Pennsylvania Whistleblower Law**

Pursuant to the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421-1428, an employer is prohibited from taking adverse employment action against an employee who makes a good faith report of wrongdoing or waste. "Wrongdoing" is defined as a "violation which is not a merely

technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." *Id*. "Waste" is defined as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." *Id*. A "good faith report" is defined as "[a] report of . . . wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." *Id*.

The Whistleblower Law applies only if Plaintiff was an employee of a public body. *See generally* 43 P.S. §§ 1421-1428. A "public body" is defined, in relevant part, as "[a]ny ... body which is created by Commonwealth or political subdivision authority *or which is funded in any amount by or through Commonwealth or political subdivision authority* or a member or employee of that body." 43 P.S. § 1422. The statute plainly and unequivocally makes any body "funded in any amount by or through Commonwealth . . . authority" a public body for purposes of the Whistleblower Law. *Riggio v. Burns*, 711 A.2d 497, 500 (Pa. Super. 1998) (en banc). Accordingly, KIPP North is considered to be a public body as defined by the statute because the school receives funding from Pennsylvania, including federal and local funding.

Here, Plaintiff has sufficiently alleged facts to overcome KIPP's summary judgment motion. It is undisputed that Plaintiff was an employee of KIPP North. Plaintiff alleges that he made multiple reports of "wrongdoing" to his employer, CEO Wiltshire and Ms. Poorman, regarding KIPP North's noncompliance with federal and state law for IEP-designated students. Plaintiff also alleged that he made reports of "wrongdoing" to the Philadelphia Police Department about serious safety concerns confronting KIPP North's campus. KIPP contends that such allegations fail as a matter of law because Plaintiff has not identified any actionable legal violation.

Based on Plaintiff's significant professional experience with IEP implementation, his assessment of KIPP North's behavioral data, and his duty to maintain a safe environment for his students and staff, the Court finds he made a good-faith report to both his employer and the police that he reasonably believed to be true.

To establish the causal connection for a claim of retaliatory termination under the Whistleblower Law, an employee "must show by concrete facts or surrounding circumstances that the report of wrongdoing ... led to the [ ] dismissal, such as that there was specific direction or information received not to file the report or that there would be adverse consequences because the report was filed." *Javitz v. Luzerne Cnty.*, 293 A.3d 570, 581 (Pa. 2023). According to the record, there is a genuine dispute as to the discussion that took place during Plaintiff's five-minute termination meeting with CEO Wiltshire and Ms. Poorman. The deposition testimony of Plaintiff and Ms. Poorman supports the position that CEO Wiltshire fired Plaintiff for no other reason than making an unauthorized call to the police for legitimate safety concerns, i.e. student with a potential gun on campus. (ECF No. 22-2). In contrast, CEO Wiltshire explains that Plaintiff's termination was a result of no longer being a good fit for the school and his inability to take responsibility for his part in the disruption at the beginning of the school year. (ECF No. 19-2). Reviewing these facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently established at this level genuine issues of material fact regarding his Whistleblower claim that should be resolved by a jury.  Therefore, summary judgment is denied as to Count I.

**Count II: First Amendment, Section 1983**

KIPP argues that summary judgment is appropriate on Plaintiff's First Amendment claim because his termination was a result of his deficiencies, and not of "any formal policy, custom, or practice." (ECF No. 19-1). Plaintiff asks the Court to accept his alleged facts as true and in the

light most favorable to him.

"Under 42 U.S.C. § 1983, public employees may sue to enforce [First Amendment] protection if (1) they spoke on a matter of public concern; (2) their interest in that field outweighs the government's concern with the effective and efficient fulfillment of its responsibilities to the public; (3) the speech caused the retaliation; and (4) the adverse employment decision would not have occurred but for the speech." *Fogarty v. Boles*, 121 F.3d 886, 888 (3d Cir.1997). Plaintiff has the burden of showing that "the speech was a substantial or motivating factor for the discharge." *Feldman v. Philadelphia Housing Authority,* 43 F.3d 823 (3d Cir.1994).

KIPP asserts that CEO Wiltshire is not a final policymaker for purposes of §1983 and that the speech at issue is not protected. However, Plaintiff has provided evidence to lead this Court, or any reasonable factfinder, to conclude that Plaintiff's speech was a substantial or motivating factor in his termination. *See id*. Plaintiff, on multiple occasions, communicated to CEO Wiltshire, Ms. Poorman, and others about KIPP North's statutory noncompliance for IEP-designated students. Plaintiff also reported to the Philadelphia Police Department the safety issues confronting KIPP North, i.e., a student with a potential gun at school and a bomb threat. Plaintiff was verbally disciplined by Ms. Poorman for his decision to call the police without her approval. In review of the actions taken by KIPP following Plaintiff's call to the police regarding the student with a potential gun, as well as CEO Wiltshire's alleged discussion with Plaintiff at his termination meeting the following day, leads this Court to conclude that Plaintiff has sufficiently raised genuine issues of material fact regarding the reason for his termination. It, therefore, follows that a reasonable factfinder—jurors should determine whether Plaintiff's testimony is credible and to what extent retaliation was a factor in his termination. Accordingly, summary judgment is denied as to Count II.

**Count III: Fourteenth Amendment, Section 1983**

Plaintiff alleges that his procedural due process rights were violated because he was terminated without an opportunity to be heard. KIPP argues that Plaintiff possessed no such right as he was an at-will employee, who has no protected property interest in continued employment. The Court disagrees. The Whistleblower Law was created as a "statutory remedy for at-will employees terminated from entities that receive funding from Commonwealth or political subdivision authority." *Riggio*, 711 A.2d at 503 (Cirillo, J., concurring). Here, it is undisputed that Plaintiff was an employee of KIPP. Plaintiff has also shown at different times throughout his short six-week tenue at KIPP North his efforts to make his superiors and others aware of the compliance violations regarding IEP-designated students and make the police aware of his safety concerns. Both, of which are considered evidence of wrongdoing. The Court finds that Plaintiff has alleged sufficient facts to state a claim for a violation of his procedural due process rights. Therefore, summary judgment is denied as to Count III.

## V.    CONCLUSION

For the reasons stated above, KIPP's Motion for Summary Judgment is **DENIED** because Plaintiff has met its burden establishing a genuine dispute of material facts.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ *John Milton Younge*
**JOHN M. YOUNGE, J.**